LEGAL AID SOCIETY OF CLEVELAND, Appellee,

v.

W & D PARTNERS I, L.L.C., et al., Appellants.

[Cite as *Legal Aid Soc. of Cleveland v. W & D Partners I, L.L.C.*, 162 Ohio App.3d 682, 2005-Ohio-4130.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85440.

Decided Aug. 11, 2005.

William D. Moore, for appellee.

David M. Leneghan, for appellant W & D Partners I, L.L.C.

Robert Zeidler, pro se.

Robert F. DiCello, for appellant Daniel D'Agostino.

MARY EILEEN KILBANE, Judge.

{¶ 1} Dan D'Agostino appeals the decision of the trial court adopting the magistrate's decision disqualifying his attorney from the trial court proceedings. D'Agostino argues that the trial court erred in striking his objections to the magistrate's decision and in disqualifying his attorney. For the following reasons, we reverse the decision of the trial court.

{¶ 2} D'Agostino is an officer of W & D Partners I, L.L.C. ("W & D"), a company doing business as a bar known as "Eve." The bar occupies a building that is owned by the Legal Aid Society and is located at 1229 West Sixth Street in Cleveland, Ohio. Prior to the filing of this action, W & D had entered into a lease with Legal Aid to rent the space occupied by the bar.

{¶ 3} In August 2003, attorney David Leneghan, on behalf of Robert Zeidler, a construction contractor, filed a complaint against W & D and D'Agostino in the Cuyahoga County Court of Common Pleas, case No. CV–03–507297. Zeidler made a claim of membership in W & D when he filed suit. Leneghan filed a temporary restraining order ("TRO") and also sought damages from D'Agostino and W & D for breach of contract and misrepresentation. In response to the filing, D'Agostino asked attorney Robert DiCello to represent him and W & D in

an attempt to prevent his removal from the company and the takeover of W & D by Zeidler.

{¶ 4} Before responding to the complaint, D'Agostino, on behalf of W & D, signed a waiver of conflict-of-interest/waiver-of-representation agreement asking Leneghan to represent W & D "in connection with certain matters, including issues concerning a lease and a liquor license."

{¶ 5} In September 2003, DiCello appeared and advocated on behalf of D'Agostino and W & D with regard to the TRO. In an order dated September 19, 2003, the common pleas court enjoined D'Agostino from acting on behalf of or representing W & D in any capacity and further enjoined D'Agostino from being on the premises of 1229 West Sixth Street.

{¶ 6} On November 3, 2003, Legal Aid filed a forcible-entry-and-detainer action against W & D, D'Agostino, and Zeidler for failure to pay rent and damages. DiCello represented D'Agostino, and Leneghan represented both Zeidler and W & D at the first hearing before the Cleveland Housing Court magistrate. The magistrate dismissed D'Agostino from the first cause of action and found that because W & D and Zeidler had failed to pay rent for the month of September 2003, Legal Aid was entitled to restitution of the premises. The magistrate ordered W & D to vacate the premises on or after January 9, 2004, and scheduled a hearing on Legal Aid's claims for monetary damages. The trial court judge later adopted the magistrate's decision.

{¶ 7} As to Legal Aid's claim for monetary damages, D'Agostino filed a cross-claim against Zeidler. Prior to the hearing, Leneghan withdrew his representation of W & D in Cleveland Housing Court and also withdrew representation of W & D as well as Zeidler in common pleas court. Leneghan then filed a motion to disqualify DiCello because of DiCello's alleged former representation of W & D. DiCello, in response, filed a motion to disqualify Leneghan because of Leneghan's alleged current as well as former representation of W & D. After a hearing, the magistrate recommended disqualification of both attorneys for conflict of interest and set the case for further hearings. The trial court adopted the magistrate's recommendation, disqualified both attorneys, and ordered both D'Agostino and Zeidler to obtain new counsel.

{¶ 8} D'Agostino appeals, raising the four assignments of error contained in the appendix to this opinion.

{¶ 9} In his first assignment of error, D'Agostino argues that "[t]he trial court erred when it struck Appellant's objections to the magistrate's decision." We agree.

{¶ 10} The trial court struck D'Agostino's objections to the magistrate's decision for failure of service. Pursuant to Civ.R. 53(E)(3)(a), a party may file

written objections to a magistrate's decision within 14 days of the filing of the decision, regardless of whether the court has adopted the decision. If the trial court has previously adopted the magistrate's decision, "the timely filing of written objections operates as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered." Civ.R. 53(E)(4)(c).

{¶ 11} In the case at bar, the trial court adopted the magistrate's decision, which became journalized and therefore effective on September 28, 2004. D'Agostino filed his objections to the decision on October 12, 2004, within the 14-day time requirement of Civ.R. 53(E)(3)(a). Because D'Agostino timely filed his objections, the filing automatically stayed the execution of the trial court's judgment disqualifying attorney DiCello and attorney Leneghan. Therefore, by serving attorney Leneghan with the objections to the magistrate's decision, D'Agostino perfected service under Civ.R. 5(A) because as of October 12, 2004, Leneghan still represented Zeidler.

{¶ 12} Accordingly, the trial court erred in striking D'Agostino's objections for failure of service. Nonetheless, the trial court addressed D'Agostino's objections and found them unpersuasive. Furthermore, because D'Agostino did not propose an alternate assigned error addressing the trial court's decision to overrule his objections, this court shall not address the merits of the decision.

{¶ 13} The trial court's journal entry striking and then ruling on D'Agostino's objections lifted the automatic stay imposed by Civ.R. 53(E)(4)(c), making the magistrate's decision, as adopted by the trial court, final as of October 27, 2004. Accordingly, though this assigned error has merit, it does not give us grounds to reverse.

{¶ 14} Because D'Agostino's second, third, and fourth assignments of error address the same issue, they will be addressed contemporaneously. D'Agostino argues that the trial court abused its discretion in adopting the magistrate's recommendation to disqualify his attorney for several reasons: Zeidler did not have standing to move for DiCello's disqualification, the doctrine of collateral estoppel barred DiCello's disqualification, Zeidler did not prove that disqualification was necessary, and the magistrate misapplied the substantial-relationship test.

{¶ 15} The standard of review for an appellate court's reviewing an attorney-disqualification order entered by a trial court is one of abuse of discretion. *155 N. High Ltd. v. Cincinnati Ins. Co.* (1995), 72 Ohio St.3d 423, 650 N.E.2d 869. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR

481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, a reviewing court may not substitute its own judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 170, 559 N.E.2d 1301.

{¶ 16} We agree with D'Agostino and find that the trial court abused its discretion in adopting the magistrate's recommendation to disqualify attorney DiCello.

{¶ 17} Disqualification of an attorney is a drastic measure that should not be imposed unless it is absolutely necessary. *Spivey v. Bender* (1991), 77 Ohio App.3d 17, 22, 601 N.E.2d 56. Ohio has adopted the three-part test for disqualification of counsel because of a conflict of interest set forth in *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio* (C.A.6, 1990), 900 F.2d 882. See *Morgan v. N. Coast Cable Co.* (1992), 63 Ohio St.3d 156, 159, 586 N.E.2d 88; *Hollis v. Hollis* (1997), 124 Ohio App.3d 481, 485, 706 N.E.2d 798; *Kitts v. U.S. Health Corp. of S. Ohio* (1994), 97 Ohio App.3d 271, 275–276, 646 N.E.2d 555. The test is as follows: (1) a past attorney-client relationship must have existed between the party seeking disqualification and the attorney he or she wishes to disqualify, (2) the subject matter of the past relationship must have been substantially related to the present case, and (3) the attorney must have acquired confidential information from the party seeking disqualification. *Dana*, 900 F.2d at 889; *Morgan*, 63 Ohio St.3d at 162, 586 N.E.2d 88, fn. 1. If a party moving to disqualify an attorney cannot meet the first prong of the *Dana* test, that party lacks standing to seek the disqualification. *Morgan*, 63 Ohio St.3d 156, 586 N.E.2d 88, at syllabus.

[A] motion to disqualify an attorney gives rise to two areas of examination: (1) the nature of the relationship between the litigants; and (2) the nature of the relationship between the attorney's past and present duties, as those duties relate to the litigants. The court must first scrutinize the relationship that existed between the moving party and the attorney that the moving party seeks to disqualify. If there is no current or past attorney-client relationship, then the motion should be denied.

*Henry Filters, Inc. v. Peabody Barnes, Inc.* (1992), 82 Ohio App.3d 255, 260, 611 N.E.2d 873.

{¶ 18} In the present case, the magistrate found that there was no attorney-client relationship between Zeidler and attorney DiCello. The magistrate then noted that Zeidler appeared to argue that as an alleged member of W & D, he had standing to bring the motion to disqualify on behalf of W & D Partners. The magistrate correctly noted that Zeidler did not file a derivative action on behalf of W & D and, therefore, Zeidler did not have standing to bring the motion to disqualify. Based on the case law cited above, the magistrate should have denied Zeidler's motion to disqualify for lack of standing. We

therefore agree with D'Agostino and find that his second assigned error has merit.

{¶ 19} However, after finding a lack of standing, the magistrate went on to rule that even in the absence of a motion to disqualify counsel, the trial court had the authority to prevent a violation of the Code of Professional Responsibility involving conflicts of interest. Because the magistrate analyzed the elements of the *Dana* test, we must respond.

{¶ 20} When looking at the Code of Professional Responsibility, the trial court must keep in mind that disqualification is a drastic measure and that "a violation of the Code of Professional Responsibility alone should not result in a disqualification, unless such disqualification is found to be absolutely necessary." *Centimark Corp. v. Brown Sprinkler Serv., Inc.* (1993), 85 Ohio App.3d 485, 489, 620 N.E.2d 134.

{¶ 21} In applying the first prong of the *Dana* test to the facts of this case, the magistrate erroneously applied the test to DiCello's previous relationship with D'Agostino and W & D. A review of the first prong of the test shows that it actually requires a prior attorney-client relationship between the party seeking disqualification and the attorney he or she wishes to disqualify. Here, Zeidler is the movant seeking to disqualify attorney DiCello. In his decision, the magistrate determined that no past attorney-client relationship existed between Zeidler and DiCello.

{¶ 22} The magistrate erred further in applying the third prong of the test when it again focused on the relationship of DiCello to W & D. The magistrate concluded that DiCello did indeed acquire confidential information from W & D during his former representation of W & D, whereas the third prong of *Dana* requires disqualification if the attorney acquired confidential information from the party seeking disqualification. The magistrate never addressed whether DiCello acquired confidential information from Zeidler and, in fact, ruled out such a possibility when concluding that there was no past attorney-client relationship between Zeidler and DiCello.

{¶ 23} Furthermore, the magistrate never established that Zeidler had demonstrated that disqualification was necessary.

{¶ 24} For the reasons stated above, we find that the trial court abused its discretion in adopting the magistrate's decision.

{¶ 25} This court's ruling on D'Agostino's second and fourth assigned errors renders D'Agostino's third assignment of error moot.

Judgment reversed
and case remanded.

CELEBREZZE, P.J., and J.J. SWEENEY, J., concur.

## Appendix

Assignment of Errors:

I. The trial court erred when it struck appellant's objections to the magistrate's decision.

II. The trial court erred when it disqualified appellant's attorney, as appellee Zeidler did not have standing.

III. The trial court erred when it held collateral estoppel did not bar the disqualification of appellant's attorney.

IV. The trial court abused its discretion when it disqualified appellant's attorney.